IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **AMBLER, LLC,** ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | |
| VS. ) | **2:13-cv-431-JHH** |
| ) | |
| **NATIONAL SURETY ,** ) | |
| **CORPORATION,** | |
| ) | |
| DEFENDANT. | |

**MEMORANDUM OF DECISION**

The court has before it the August 26, 2014 Motion (Doc. # 26) for Summary Judgment filed by Defendant National Surety Corporation. Pursuant to the court's August 27, 2014 order (Doc. # 27), the motion was deemed submitted, without oral argument, on October 3, 2014. After careful consideration of the briefs and evidence before the court, the Motion (Doc. #26) for Summary Judgment is due to be denied for the following reasons.

**I. Procedural History**

Plaintiff Ambler, LLC commenced this action on December 28, 2012 by filing a complaint in the Circuit Court of Shelby County, Alabama, alleging breach of contract and bad faith under Alabama law. (Exh. A to Doc. #1.)  On March 4, 2013,

National Surety properly removed[1] the Complaint to this court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, as amended. Defendant filed a Motion for Summary Judgment on May 15, 2014 and asserted that Plaintiff failed to present any evidence from which a reasonable jury could conclude that National Surety acted in bad faith in denying the claim or that National Surety breached the contract of insurance in denying the claim. (Doc. #12.) On July 10, 2014, the court granted Defendant's Motion for Summary Judgment as to Plaintiff's claim for bad faith. (Doc. #23.) Plaintiff's claim for breach of contract is all that remains.

Both parties have filed briefs and submitted evidence in support of their respective positions. Defendant submitted a brief (Doc. #26) and evidence[2] (Exhs. A-J to doc. # 26) in support of its own motion for summary judgment . On September 4, 2014, Plaintiff filed a brief and evidence[3] (Doc. # 28) in Opposition to Defendant's

---

[1] National Surety was served with the Summons and Complaint by certified mail on February 3, 2013. (Doc. # 1 at ¶ 3.)

[2] The Defendant submitted the following evidence in support of summary judgment: affidavit of Philip Kaufman with exhibits; deposition of Malcolm Bethea with exhibits; deposition of Wayne A. Henderson with exhibits; deposition of James A. Durham with exhibits; deposition of Philip Kaufman with exhibits; deposition of Stewart Lipham with exhibits; affidavit of Richard A. Rice, P.E. with exhibits; affidavit of John D. Funk, P.E.with exhibits; photograph of beam; and July 30, 2014 deposition of Gregory L. Tucker with exhibits.

[3] The plaintiff submitted the following evidence in opposition to summary judgment: 4/1/12 letter from Stewart Lipham to Mac Bethea; 11/17/08 letter from Roger Nulton, Jr.; various pictures of collapsed deck; excerpts of deposition of Gregory Tucker Vol. II; excerpts of deposition of Wayne Henderson; excepts of deposition of Philip Kaufman; excerpts of deposition of Stewart Lipham; excerpts of deposition of Malcolm Bethea; excerpts of deposition of Steve Sims; excerpts of deposition of Jim Hayes; and excerpts of deposition of Gregory L.

Motion for Summary Judgment. On September 23, 2014, Defendant filed a brief (Doc. # 29) in reply to Plaintiff's opposition.[4]

**II. Standards for Evaluating a Summary Judgment Motion**

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Chapman v. AI Transport, 229 F.3d 1012, 1023 (11th Cir. 2000). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. See id. at 323. Once the moving party has met its burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. See id. at 324.

The substantive law will identify which facts are material and which are

---

Tucker.

[4] Defendant re-submitted two pages of Durham's deposition with its reply brief.

irrelevant. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. See Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. See id. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. See Fitzpatrick, 2 F.3d at 1115-17 (citing United States v. Four Parcels of Real Property, 941 F.2d 1428 (11th Cir. 1991)(en banc)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial. See Fitzpatrick, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party

may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to <u>affirmatively</u> show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question. This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case. <u>See</u> <u>Fitzpatrick</u>, 2 F.3d at 1115-16. If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts. <u>See</u> <u>Lewis v. Casey</u>, 518 U.S. 343, 358 (1996) (citing <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555,

561 (1992)).

### III. Relevant Undisputed Facts[5]

National Surety issued an insurance policy to the Plaintiff for the policy period November 1, 2008 through November 1, 2009. (Ex. A-1 to Kauffman Aff.) This action arose after National Surety refused to provide coverage under the policy for the collapse of a balcony at Plaintiff's Woodbrook Trail Apartment Complex on October 29, 2009. Plaintiff contends that the balcony collapse was caused by hidden decay, which it contends is covered by the policy. National Surety, on the other hand, contends that the collapse was caused by improper workmanship, which is excluded by the policy.

### A. The Policy

The policy at issue generally did not include any coverage for collapse. Under the "Additional Coverage" clause, however, the policy did provide coverage for collapse that occurred because of "hidden decay":

> D. Additional Coverage - these additional coverages apply only when Special Cause of Loss is covered.
>
> 1. Collapse
>
> We will pay for loss or damage caused by or resulting from

---

[5] If the facts are in dispute, they are stated in a manner most favor to the non-movant. See Fitzpatrick, 2 F.3d at 1115.

> risks of direct physical loss involving collapse of a building
> or any part of a building caused only by one or more of the
> following:
>  . . .
> b. Hidden decay of the Covered Property;

(Exh. 1 to Kauffman Aff. at 74.)

That being said, the policy contained an exclusion for damage caused by or resulting from improper or faulty workmanship, which provided in pertinent part:

> 2. We will not pay for loss or damage caused by or resulting from any of the following: . . .
>  . . .
> c. Faulty, inadequate or defective:
>  . . .
> (2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading compaction;
>  . . . .

(Id. at 70-72.)[6]

**B. The Balcony Collapse**

The balcony at issue is located at Building 1743 of the Woodbrook Trail Apartment Complex. (Bethea Dep. at 21.) Building 1743 was originally constructed in 1976 as part of Phase One of the Woodbrook Trail Apartments. (Id. at 133, 149.) The balcony was originally supported by three cedar posts, each measuring 6" by 6". (Id. at 147.) The floor of the balcony consisted of a two-inch concrete slab which was

---

[6] The policy also contained an Ordinance and Law Coverage endorsement. This provision is relevant only as it relates to damages and the court does not discuss it here.

supported by plywood and 2x8 boards. (Id. at 184.) The 2x8 boards were connected to the three cedar posts which held up the balcony. (Id.) Beneath the deck slab and its supporting beams was a cosmetic piece of plywood called a soffit which had no structural significance but was there to cover the supporting beams that connected with the exterior parts of the balcony . (Hayes Dep. at 63, 75; Tucker Dep. II at 16.)

In October 2007, Plaintiff's then-insurer State Farm Insurance required Plaintiff to replace a number of balcony posts at the apartment complex due to rot. (Bethea Dep. at 145, 151-52; Exh. 58 to Bethea Dep.) As part of the work performed, Plaintiff partially replaced two of the cedar posts for Building 1743, as well as the connections which affixed the balcony to these two posts. (Bethea Dep. at 182, 196-97, 221-222; Exh. 58 to Bethea Dep.) The posts on the left and right side of the balcony were spliced and partially replaced, and the balcony-to-post connections were replaced as well. (Bethea Dep. at 196-97.) The center post was not replaced. (Id.) Plaintiff also replaced four bands, or the fascia that surrounds the balcony and the balcony structure. (Bethea Dep. at 155; Exh. 58 to Bethea Dep.) There is no evidence in the record that the soffit was removed during the repairs. Pressure treated wood was used to make the repairs. (Id. at 160.) The repairs were completed before

December 5, 2007.[7]  (Bethea Dep. at 160; Exh. 58 to Bethea Dep.)

Two years later, on October 29, 2009, the balcony at Building 1743 collapsed. (Kaufman Aff. ¶ 5.) The collapse was spontaneous and occurred while the balcony was unoccupied. (Doc. # 28 at 4.) During the collapse, the outer edge of the balcony, that was connected to the three balcony posts, fell first. (Bethea Dep. at 201.) Plaintiff reported the loss to its insurance agent the day after the collapse. (Kauffman Aff. ¶ 5.)

**C. The Claim and Investigation**

On November 2, 2009, members from an engineering firm, Tucker-Jones Engineers Associated, visited the site of the collapse at the request of Plaintiff. (Exh. 46 to Bethea Dep.) The purpose of the visit was not to provide forensic engineering to determine the cause of the collapse, but to determine a design for the repair or replacement of the balconies. (Id.) The debris from the collapse had already been removed and the actual balcony framing could not be seen due to the plywood soffit concealing the framing. (Id.)

The next day, members from Tucker-Jones Engineers Associated returned,

---

[7] Plaintiff did not produce these 2007 repair records to Defendant until October 2, 2013, after Plaintiff filed the lawsuit and almost 4 years after the collapse. (Bethea Dep. at 145, 154-55.) Plaintiff gave notice to the Defendant of these 2007 repairs after the Defendant investigated the loss beginning in November 2009, after various reconsiderations of coverage on July 13, 2010 and January 6, 2012, and over nine months after Plaintiff filed the lawsuit.

along with officials from the City of Alabaster,[8] and met at the apartment complex to review the framing of the balcony[9] at Building 1741, the building adjacent to the balcony that collapsed. (Id.) In a letter to Plaintiff, engineer Greg Tucker stated that the wood framing "appear[ed] to be connected solely with nails and there were no lag bolts or hanger type connections used." (Id.) "Based on the capacity of the member sizes supporting the concrete slab and deck, the rot and deterioration of the members, and the lack of proper connections," Tucker recommended that all the balconies be removed and replaced. (Id.)

On November 3, 2009, Stewart Lipham inspected the loss on behalf of National Surety. (Kauffman Aff. ¶ 6.) Lipham initially noted that the loss appeared to be a covered collapse due to hidden decay, and recalled at his deposition that "[d]ecay appeared to play a major role in the balcony collapse." (Lipham Dep. At 33.) Although Lipham noticed that lag bolts had not been used, he told Plaintiff that lag bolts were current requirements but not when the deck was built." (Bethea Dep. At 177.) Lipham did not make a coverage determination based upon this initial

---

[8] On December 1, 2009, the City of Alabaster ordered Plaintiff to immediately replace the existing balconies within all Phase One buildings. (Exh. 47 to Bethea Dep.)

[9] To review the framing, the soffit was removed. (Exh. 46 to Bethea Dep.)

inspection.[10] (Kauffman Aff. ¶ 7.) Lipham asked to see the remains of the fallen balcony at issue during his inspection, but he was told that the balcony had been removed from the premises. (Lipham Dep. at 17-18.)

To assist National Surety's investigation, Richard Rice, a licensed and Board Certified Forensic Engineer, was hired to determine the cause of the collapse. (See Rice Aff.) Rice inspected the loss on February 23, 2010. (Id.) Rice concluded that the cause of the balcony collapse was the result of improper connections between the balcony and the columns. (Exh. 1 to Rice Aff.)

**D. The Denial of Coverage and Various Reconsiderations**

Relying on the report from Rice, on April 1, 2010, National Surety denied the loss based upon the improper construction exclusion in the policy. Specifically, National Surety found that the cause of the collapse was due to improper construction or workmanship and not to decay. (Exh. 2 to Kauffman Aff.) National Surety's denial of coverage letter states as follows, in pertinent part:

> [Richard Rice's] inspection, conducted on February 23, 2010, concludes that the cause of the balcony collapse was the result of improper construction. Specifically, framing nails were used as a structural connection where the possibility of pull-out existed, and the lag bolt holes had

---

[10] Lipham did not have authority to approve any loss exceeding $50,000. (Kaufman Dep. at 22.) Lipham also did not have authority to deny a loss (Lipham Dep. at 72.) Instead, Lipham was required to obtain approval for all coverage decisions related to this claim. (Kaufman Dep. at 22; Lipham Dep. at 72.)

11

> been pre-drilled larger than the actual bolts.  This was inadequate support to keep the balcony in place.
>
> . . .
>
> As per the policy exclusions . . ., collapse is an excluded cause of loss, and the cause of the collapse is not included in the specified clauses for the Additional Coverage for collapse.  In addition, . . . faulty design, materials and/or workmanship are also specifically excluded causes of loss under the policy.

(Exh. 2 to Kauffman Aff.)

On April 13, 2010, Plaintiff requested that the Defendant reconsider the denial of coverage.  (Exh. 3 to Kauffman Aff.)  Plaintiff stated that it believed that the cause of the collapse was hidden rot and decay.  (Id.)  Plaintiff further stated that "[t]he balcony in question was part of the original construction and was approximately 30 years old.  I believe that it is self-proving that the design, methods and construction materials were sufficient for 25-30 years of use."  (Id.)  This statement was not completely accurate, however, as two of the posts and connections on the balcony at issue had been replaced two years before the collapse.  (Bethea Dep. at 246.)

On May 18, 2010, Defendant agreed to reconsider the denial.  (Exh. 4 to Kauffman Aff.)  Defendant requested further documents related to all maintenance and/or repair records, inspection reports, and the location of the collapsed balcony materials.  (Id.)  In response, Plaintiff gave National Surety a one page "Post

Replacement" sheet, but that sheet omitted Building 1743.  Exh.7-A to Kauffman Aff.)

On July 13, 2010, National Surety affirmed its denial of Plaintiff's claim for coverage.  (Exh. 8 to Kauffman Aff.)  National Surety succinctly explained the reasoning behind its coverage decision as follows:

> [C]ollapse is an excluded peril pursuant to the main policy form . . . .  An additional coverage is provided for collapse where it is caused "only by one or more of" six specifically enumerated, named perils. . . .  One of those six perils is "hidden decay of the covered property."  At the same time, there is no coverage for collapse if it is caused, proximately or in part, by any peril not named under the additional coverage for collapse.
> . . .
>
> It is clear from our review of all of the documents you presented to us that, in fact, multiple experts visited the loss location and all observed the existence of numerous construction deficiencies.  It is also apparent from the documents we reviewed that these construction defects were a concurrent cause, if not the proximate cause for this collapse.

(Exh. 8 to Kauffman Aff.)

Over a year later, on December 5, 2011, Plaintiff again asked Defendant to reconsider its coverage position. (Exh. 9 to Kauffman Aff.) In support of this request, Plaintiff attached a report of James A. Durham, P.E., a structural engineer with a master's degree in structural engineering, who had inspected the property over a year

13

earlier on September 17, 2010 and drafted his report on December 2, 2010.  (Id.)

Durham's report concluded as follows:

> Based upon my photograph and document review and conversation with Gregory Tucker, it is my opinion that the deck collapse at Apartment Building 1743 occurred suddenly and without warning due to hidden rot/decay. As stated, this deck had been in service for more than 30 years and withstood its own dead weight as well as the weight of deck occupants without any problems . . . . Moreover, it is apparent that the nail/bolted connections were certainly sufficient to support the deck platforms throughout this apartment complex for more than 30 years . . . .[11]

(Id.)  Durham testified that the critical decay was not related to the connecting columns but to the wood cross beams, which were covered by the soffit.  (Durham Dep. at 42.)

On January 6, 2012, Defendant again denied coverage based upon improper construction. (Exh. 10 to Kauffman Aff.) National Surety stated that the construction defect that caused the loss was that "nails were improperly used where good

---

[11] During his deposition, Durham admitted that his assumption that the connections had lasted 30 years, which was a large part of the basis of his opinion, was incorrect, and instead that the connections had only been there for 2 years. (Durham Dep. at 31-32, 36.)  After he learned that the connections had been replaced only two years before the collapse, Durham testified that his opinion changed and that the collapse was most likely caused by connection failure because any decay would have been repaired in 2007. (Id. at 91-95.)  Specifically, Durham opined that had there been any decay on the balcony, it necessarily would have been remedied when the columns and bands were replaced two years earlier, which "rules out any chance of rot and decay contributing to the failure." (Id. at 91-94.)  Instead, he stated that in his opinion at the deposition that the collapse occurred because of a "sheer failure in the toenailed connections" excluding any decay. (Id. at 95.)  Importantly, this revised opinion was based on the assumption that all the rot was observable and replaced in 2007. (Id. at 97.)

construction methods required bolts" and rejected Durham's "opinions about decay" as "not supported by the evidence."  (Id.)

**E.  The Instant Lawsuit**

On December 28, 2012, almost a year after the final reconsideration and denial, Plaintiff commenced this action by filing a complaint in the Circuit Court of Shelby County, Alabama, alleging breach of contract and bad faith under Alabama law. (Exh. A to Doc. #1.)  On March 4, 2013, National Surety properly removed the Complaint to this court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, as amended.

During the course of discovery, multiple witnesses and experts were deposed relating to the cause of the collapse.[12]  On December 13, 2013, David Funk Engineering, Inc. prepared a report concerning the cause of the collapse. (Exh. 1 to Funk Aff.)  After reviewing all the materials and documents which were submitted by Plaintiff in support of the claim, Funk Engineering found that the cause of the collapse was improper construction.  (Id.)

**IV. Applicable Substantive Law and Analysis**

The only remaining claim in this action is the one for breach of contract. "A contract of insurance, like other contracts, is governed by the general rules of

---

[12] Gregory Tucker was deposed twice in this case.  As a result of the court's July 10, 2014 order, the first deposition was striken and could not be used as evidence in this case. (See Doc. #23.)  Plaintiff, however, continually cited to this first deposition throughout its brief and statement of facts.  The court did not consider this evidence in making its determination.

contracts." Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co., 817 So.2d 687, 691 (Ala. 2001). The material elements necessary to establish a cause of action for breach of contract under Alabama law are: "(1) a valid contract binding the parties; (2) the plaintiff['s] performance under the contract; (3) the defendant's non performance; and (4) resulting damages." Reynolds Metal Co. v. Hill, 825 So.2d 100, 105 –106 (Ala. 2002) (citing State Farm Fire & Cas. Co. v. Slade, 747 So.2d 293, 303 (Ala. 1999)). Ambler contends that National Surety breached the contract by failing to cover the loss of the collapsed balcony (and potentially all the other balconies which had to be replaced on the property). On the other hand, National Surety counters that it was not required to pay under the contract because the collapse was not a covered loss.

In Alabama, the insured bears the burden of establishing coverage by demonstrating that a claim falls within the policy, while the insurer bears the burden of proving the applicability of any policy exclusion. See, e.g., Colonial Life & Accident Ins. Co. v. Collins, 280 Ala. 373, 194 So.2d 532, 535 (Ala.1967); U.S. Fidelity. Guar. Co. v. Armstrong, 479 So.2d 1164, 1168 (Ala.1985). However, the insurer's burden to prove the applicability of an exclusion does not "shift[ ] the general burden of proof from plaintiff to defendant." Belt Auto. Indem. Ass'n v. Ensley Transfer & Supply Co., 211 Ala. 84, 99 So. 787, 790 (Ala.1924). Rather, "when the defendant has offered evidence showing prima facie that the case is one of

specified nonliability, the burden of showing a case within the operation of the policy remains upon the plaintiff." Id.

The basic question before the court is this: whether there is a dispute of material fact as to what caused the collapse of the balcony at building 1743. Plaintiff contends that it was caused by hidden decay, which is covered under the policy, and Defendant contends that it was caused by faulty workmanship, which is not covered under the policy. As described in detail above, both parties have put forward expert evidence[13] supporting their position and a clear question of fact remains as to the cause of the collapse. That question must be answered by a jury.

## V. Conclusion

In summary, the court finds that material issues of fact remain and that Defendant National Surety Corporation is not entitled to judgment as a matter of law as to the remaining breach of contract claim asserted by Plaintiff. A separate order will be entered denying the Motion (Doc. # 26) for Summary Judgment.

**DONE** this the   20th   day of November, 2014.

_____
SENIOR UNITED STATES DISTRICT JUDGE

---

[13] The court rejects Defendant's argument that Plaintiff does not have expert evidence in support of its position. Although Durham's testimony changed during his deposition, that change did not amount to a complete recall of his previous opinion that decay caused the collapse - especially in light of all the assumptions that were made throughout his testimony.